UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FRANKLIN CAPITAL HOLDINGS LLC,       :
                                                                          :
        Plaintiff/Counter-Defendant,       :       13cv1153 (HB)
                                                                          :
-against-                                                             :
                                                                          :       OPINION & ORDER
NY ACCESSORY GROUP, LLC,             :
        Defendant/Counter-Claimant.       :
-----------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff Franklin Capital Holdings LLC ("Plaintiff") brings this action for breach of contract against Defendant NY Accessory Group ("Defendant"), and moves for summary judgment on Plaintiff's breach of contract claim and Defendant's counterclaims for breach of warranty against Plaintiff and Fairdeal Apparel, LLC ("Fairdeal") and for indemnification only against Fairdeal.[1] Plaintiff also moves to strike portions of the affidavit of Mark Seruya and Defendant's Responsive Rule 56.1 Statement. For the reasons set forth below, Plaintiff's motions are GRANTED, and as a consequence I need not reach Defendant's indemnification counterclaim. Parenthetically, the Court notes that the motion must be denied as well, due to the Defendant having failed to effect timely service on Fairdeal.

## BACKGROUND[2]

      On April 12, 2012, Plaintiff entered into an Accounts Receivable Purchase Agreement ("Purchase Agreement") with Fairdeal through which Plaintiff purchased Fairdeal's right to certain accounts, including future accounts. (Pl.'s 56.1 ¶ 20; Edidin Decl. ¶ 4.) On June 13, 2012, Defendant issued three purchase orders, totaling $134,400 (collectively, "Purchase Orders") to Fairdeal, which were included in Fairdeal's Purchase Agreement with Plaintiff. (Pl.'s 56.1 ¶¶ 4, 5; Def.'s Opp. Mem. Ex. B.)[3] The Purchase Orders were for 19,200 shirts and ties packed in clear gift boxes (collectively, "goods"). (Pl.'s 56.1 ¶ 8; Seruya Dep. 15:19-23; Def.'s Opp. Mem.

---

[1] There is no indication on the docket or otherwise that Fairdeal was ever served, in violation of Fed. R. Civ. P. 4(l) & (m).
[2] These facts are undisputed unless otherwise noted.
[3] Both parties have attached exhibits directly to their briefs rather than to attorney affidavits. As both parties used this practice, and neither party contests the authenticity of the exhibits, I will accept exhibits from both parties without an attorney affidavit.

1

Ex. A.) The Purchase Orders included fifteen instructions about the quality and presentation of the goods, including a note in bold stating "Instructions to Follow for Master PO," and listed a "Start Ship" date of July 20, 2012 and a "Completion Date" of August 5, 2012. (Def.'s Opp. Mem. Ex. B.) Fairdeal complied with all instructions listed on the Purchase Orders except the ship date. (Seruya Dep. 17:12-19; 18:5-20; 18:21-19:10.)  According to Mark Seruya ("Seruya"), the sole owner of Defendant company, the goods arrived "sometime in September." (Seruya Dep.  7:24-8:6; 31:20-32:4.) Plaintiff does not dispute that the goods were delivered late. (Pl. Mem. at 5.) Notwithstanding their late delivery, Defendant accepted delivery of the goods and inspected them. (Pl.'s 56.1 ¶ 10; Pl.'s Mem. Ex. D, Pl.'s Requests to Admit ¶ 2; Seruya Dep. 16:11-14; 18:2-4;19:1-3.) At some point thereafter, Defendant noticed a "problem . . . within the gift box, the tape used to seal the gift box was not adhering." (Seruya Dep. 33: 17-19.) Defendant claims that its customers complained about this and returned goods to Defendant as a result. (*See* Def. Opp. Mem., Exs. C and D, Forms reflecting Returns to Defendant.) After this issue arose, Defendant attempted to sell and successfully sold some of the goods. (Seruya Dep. 40:20-41:8.) None of the goods have been returned to Fairdeal, nor have Fairdeal or Plaintiff been paid for these goods. (*Id.* at 57:13-16; 74:22-75:5.)

## DISCUSSION

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Id.* "In opposing the motion for summary judgment, the non-moving party may not rely on 'conclusory allegations or unsubstantiated speculation,' or on mere denials or unsupported alternative explanations of its conduct." *Abbey v. 3F Therapeutics, Inc.,* 06 CV 409 KMW, 2011 WL 651416, *6 (S.D.N.Y. Feb. 22, 2011) *aff'd sub nom. Abbey v. Skokos*, 509 F. App'x 92 (2d Cir. 2013)(quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998), and citing *S.E.C. v. Grotto,* No. 05–5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct.24, 2006). "Rather, the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Id.* (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986)).

    **A.  Defendant's Acceptance of Goods**

It is undisputed that Defendant accepted delivery of the goods at issue here. Defendant's ability to revoke acceptance is governed by N.Y. U.C.C. Law §§ 2-607 and 2-608. In relevant part, § 2-607 provides:

> (2) Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this Article for non-conformity.

N.Y. U.C.C. Law § 2-607. There are two alleged non-conformities at issue here: the late delivery date and the non-adhering tape. However, because Defendant was aware of the late delivery date at the time of delivery and accepted the goods, tardiness of delivery may not be a basis for revocation.

Defendant claims that it did not know about the non-adhering tape at the time of delivery, while Plaintiff opines that the Purchase Orders did not require that a certain type of tape be used, and argues that a failure to use any specific tape where none is prescribed cannot constitute a non-conformity. Each Purchase Order provides the requirements listed below and as is plain to see there is no specific tape required:

> **INSTRUCTIONS TO FOLLOW FOR MASTER PO#**
> 1) Size scale enclosed to be used
> 2) Shirts must be packed in 12 PIECER prepacks
> 3) Must follow the DK-SLIM FIT SPECS
> 4) Must have printed collar stay
> 5) For polybag – you must use SE quality for polybag
> 6) Polybag must be printed with the following information: (a) name of brand must be printed on the front face of polybag and the top of polybag, (b) size stickers must be printed on the bottom right corner of polybag and the top of the polybag to the right of the name, (c) RN# must be printed at the at the back of polybag, (d) Country of origin must be printed at the back of polybag, (e) Warning instruction must be printed at the back of polybag
> 7) Must have adhesive sticker at the back of all hangtags with style#, name and color printed.
> 8) All outer boxes must be marked with PO#, style#, color, quantity, size scale, weight of outer carton and dimension of outer carton.
> 9) All shirts must have TAILED BOTTOM
> 10) All shirts must have PEARL (MUST BE PRE-APPROVED)
> 11) All shirts must have EDGE itch stitching
> 12) Price tickets will follow shortly
> 13) CUFF MUST BE FOLDED TO THE FRONT OF SHIRT

3

> 14) ALL SHIRTS MUST BE FOLDED IN STAND UP COLLAR FOLDING FOLLOWING THE SHIRT BEING SENT TO YOU FOR PACKAGING AND ACCESSORIES.
> 15) ALL SHIRTS MUST BE DUAL SIZED

*Id.* Despite these detailed instructions on each Purchase Order, the type of tape that must be used is not addressed. *See id.,* "Instructions to Follow for Master PO" Nos. 5 through 8.

Yet Defendant argues that Fairdeal used a different kind of tape than the type required by Defendant. *See* Seruya Dep. 32:22-33:5 (Defendant "had alerted Amrik [allegedly an employee of Fairdeal] that this was the only tape to use to seal the boxes, the proper tape was not used . . .") Defendant presents no evidence that this oral instruction was ever communicated to Fairdeal, or that such a requirement was the common practice in the industry. Indeed, Defendant offers nothing more than its owner's self-serving testimony to support its contention that a certain type of tape was required. This is insufficient to defeat summary judgment. *See Abbey,* 2011 WL 651416 at *6. Thus, Defendant has not demonstrated that the type of tape used is a nonconformity on which Defendant could have based revocation. Further, even assuming *arguendo* that the non-adhering tape did represent a non-conformity such that revocation under §2-607 would be permissible, Defendant failed to take adequate steps to revoke acceptance of the goods.

### B. Defendant's Failure to Revoke

Defendant's revocation is governed by N.Y. U.C.C. § 2-608, which provides, in relevant part:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

N.Y. U.C.C. Law § 2-608. Defendant argues that the late delivery made it difficult to discover the alleged non-conformity with the tape prior to acceptance, while Plaintiff contends that Defendant never effectively rejected the goods after accepting them.

"Acceptance of goods can occur in a number of ways, one of which is when the buyer fails to make an effective rejection after having had a reasonable opportunity to inspect the goods." *Sears, Roebuck & Co. v. Galloway*, 195 A.D.2d 825, 826, 600 N.Y.S.2d 773 (1993)(internal citation omitted). In particular, "mere complaint about the goods does not constitute a clear and unequivocal act of rejection." *Id.* (internal quotation and citation omitted). Here, Defendant offers no evidence of a "clear and unequivocal act of rejection" that is required. *See id.* Although Defendant asserts that it "made multiple, specific acts of rejection immediately thereafter [learning of the supposed nonconformities], namely communicating to Fairdeal that it was canceling the orders," *see* Def. Opp. Mem. at 8, Defendant offers no significant evidence of this revocation. Seruya testified in his deposition that he sent emails to an employee of Fairdeal explaining "that the goods were late and that we are having issues now on top of the lateness and we want to return the goods," but did not produce any of the emails that he supposedly sent. Seruya Dep. 56:24-57:1. Further, despite his stated desire to return the goods, Defendant never actually did so. Seruya Dep. 57:13-16. Beyond the intention to revoke expressed in an unseen email, Defendant provides no additional details about when or how the revocation occurred. Further, "[a]cceptance of goods occurs when the buyer . . . does any act inconsistent with the seller's ownership…" N.Y. U.C.C. Law § 2-606 (c)(1). Here, Defendant acted "inconsistently with the seller's ownership" by continuing to sell the goods even after he allegedly revoked acceptance. Seruya Dep. 40:20-41:21.

In sum, Plaintiff has demonstrated that Defendant accepted the goods, while Defendant has neither shown that the goods were non-conforming nor that the acceptance of the goods was revoked. Defendant attempts to rely on "'conclusory allegations or unsubstantiated speculation,' or on mere denials or unsupported alternative explanations of its conduct," which is insufficient to defeat summary judgment. *See Abbey*, 2011 WL 651416 at *6, quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Since there are no outstanding material issues of fact, summary judgment must be granted for Plaintiff on the breach of contract claim. Further, Defendant's breach of warranty counterclaim cannot stand where there is no material issue regarding

Defendant's acceptance of the goods and its failure to revoke that acceptance. Thus, Plaintiff is entitled to summary judgment on Defendant's breach of warranty counterclaim.

### C. Plaintiff's Motion to Strike

Plaintiff moves to strike portions of Seruya's affidavit and Defendant's Rule 56.1 Statement. With respect to Seruya's affidavit, Plaintiff seeks to strike those paragraphs that rely on admissible hearsay. It is well established that "[h]earsay is not sufficient to defend a motion for summary judgment." *Wheeler v. Natale*, 178 F. Supp. 2d 407, 411 (S.D.N.Y. 2001)(citing *Albert v. Loksen,* 239 F.3d 256, 266 (2d Cir., 2001)); *see also* Fed. R. Civ. P. 56(c)(4). Paragraphs 12, 16, 18, 20 and 22 of Seruya's affidavit contain inadmissible hearsay and thus will be stricken from the record. Further, none of the statements in Defendant's Responsive Rule 56.1 statement are "followed by citation to evidence which would be admissible," as required by the local rules. *See,* S.D.N.Y. Local Rule 56.1(d). Thus, Defendant's 56.1 statement will be stricken.

## CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the foregoing reasons, Plaintiff's motion for summary judgment on Plaintiff's breach of contract claim and Defendant's counterclaim for breach of warranty, and Plaintiff's motion to strike are GRANTED. Consequently, the Court need not reach Defendant's indemnification counterclaim, and furthermore, the docket has no record that the Defendant effected timely service on Fairdeal. Judgment is granted in Plaintiff's favor in the amount of $134,400, with interest. The Clerk of the Court is instructed to close all open motions and this case, and remove it from my docket.

**SO ORDERED.**

Date: 5/21/14
New York, New York

HAROLD BAER, JR.
**United States District Judge**

6